**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 49003**

| | |
|---|---|
| GREGORY CONAN WILLIAMS, | ) |
| | ) **Filed: November 9, 2022** |
| Petitioner-Appellant, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| STATE OF IDAHO, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Respondent. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Nancy A. Baskin, District Judge.

Judgment summarily dismissing petition for post-conviction relief, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Ben P. McGreevy, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

_____

LORELLO, Chief Judge

Gregory Conan Williams appeals from the judgment summarily dismissing his petition for post-conviction relief. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Williams was charged with first degree stalking in the underlying criminal case. At a jury trial, the victim testified that Williams sat near her while she was attending a concert. At this time, a no-contact order prohibited Williams from being within 300 feet of the victim. According to the victim, there were forty to fifty people at the concert. The victim testified that Williams exited the building minutes after the victim left and that, when she was outside with security personnel,

1

Williams stared at her for about seven minutes while standing fifteen to twenty feet away from her.

Regarding the number of people at the concert, an acquaintance of the victim testified that there were "probably a couple hundred." One of the security guards testified that the building was at "three-quarters capacity" full and that he believed there were over one hundred people. Another security guard testified that there were over two hundred people there. Williams testified at trial that the building was "packed" and that one of the band members later informed Williams that the building was at or over its capacity of 320 people during the concert. Williams further testified that he "never saw" the victim while in the building and that, while walking outside, he noticed the victim. According to Williams, he kept walking and left "immediately."

During closing arguments, Williams' trial counsel asserted that the victim made "a couple statements that were just flatly inconsistent with" testimony from other witnesses. One of the inconsistencies noted was that the victim testified there were forty to fifty people at the concert, which conflicted with the accounts given by the victim's acquaintance, security personnel, and Williams. Ultimately, a jury found Williams guilty of first degree stalking. Williams appealed, and this Court affirmed his sentence in an unpublished opinion. *State v. Williams*, Docket No. 45749 (Ct. App. Apr. 19, 2019).

Williams filed a petition for post-conviction relief asserting, among other claims, that his trial counsel provided ineffective assistance. The State moved for summary dismissal. Relevant to this appeal, Williams argued that his trial counsel was ineffective by not calling "witnesses to corroborate [Williams'] testimony that the venue was dark[1] and crowded." The district court granted the State's motion and entered judgment dismissing Williams' petition. Williams appeals.

## II.

### STANDARD OF REVIEW

On appeal from an order of summary dismissal, we apply the same standards utilized by the trial courts and examine whether the petitioner's admissible evidence asserts facts which, if true, would entitle the petitioner to relief. *Ridgley v. State*, 148 Idaho 671, 675, 227 P.3d 925, 929

---

[1] It is not clear how other witnesses could offer corroborating testimony that it was dark at the concert. Review of the trial transcript does not reveal that Williams testified that the concert was dark and, consequently, there was no testimony on that point to corroborate.

(2010); *Sheahan v. State*, 146 Idaho 101, 104, 190 P.3d 920, 923 (Ct. App. 2008). Over questions of law, we exercise free review. *Rhoades v. State*, 148 Idaho 247, 250, 220 P.3d 1066, 1069 (2009); *Downing v. State*, 136 Idaho 367, 370, 33 P.3d 841, 844 (Ct. App. 2001). The Court liberally construes the facts and reasonable inferences in favor of the nonmoving party. *Ricca v. State*, 124 Idaho 894, 896, 865 P.2d 985, 987 (Ct.App.1993).

## III.

## ANALYSIS

Williams asserts the district court erred by applying an incorrect legal standard and by concluding that his trial counsel was not ineffective by failing to call additional witnesses to corroborate Williams' testimony regarding the crowd size at the concert on the night of the stalking incident. The State responds that the district court applied the correct legal standard and did not err in summarily dismissing Williams' ineffective assistance of counsel claim. We affirm.

Idaho Code Section 19-4906 authorizes summary dismissal of a petition for post-conviction relief, either pursuant to motion of a party or upon the court's own initiative. Summary dismissal is permissible only when the petitioner's evidence has raised no genuine issue of material fact that, if resolved in the petitioner's favor, would entitle the petitioner to the requested relief. If such a factual issue is presented, an evidentiary hearing must be conducted. *Gonzales v. State*, 120 Idaho 759, 763, 819 P.2d 1159, 1163 (Ct. App. 1991); *Hoover v. State*, 114 Idaho 145, 146, 754 P.2d 458, 459 (Ct. App. 1988); *Ramirez v. State*, 113 Idaho 87, 89, 741 P.2d 374, 376 (Ct. App. 1987). Summary dismissal of a petition for post-conviction relief may be appropriate, however, even where the State does not controvert the petitioner's evidence because the court is not required to accept either the petitioner's mere conclusory allegations, unsupported by admissible evidence, or the petitioner's conclusions of law. *Roman v. State*, 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct. App. 1994); *Baruth v. Gardner*, 110 Idaho 156, 159, 715 P.2d 369, 372 (Ct. App. 1986).

To prevail on an ineffective assistance of counsel claim, the petitioner must show that the attorney's performance was deficient and that the petitioner was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Self v. State*, 145 Idaho 578, 580, 181 P.3d 504, 506 (Ct. App. 2007). To establish a deficiency, the petitioner has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*,

3

114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Knutsen v. State*, 144 Idaho 433, 442, 163 P.3d 222, 231 (Ct. App. 2007). To establish prejudice, the petitioner must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. *Aragon*, 114 Idaho at 761, 760 P.2d at 1177; *Knutsen*, 144 Idaho at 442, 163 P.3d at 231. This Court has long adhered to the proposition that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Gonzales v. State*, 151 Idaho 168, 172, 254 P.3d 69, 73 (Ct. App. 2011). In order to avoid summary dismissal of an ineffective assistance of counsel claim, the petitioner must present a prima facie case on both deficient performance and prejudice. *See Berg v. State*, 131 Idaho 517, 518, 960 P.2d 738, 739 (1998).

Williams argues that the district court "applied a heightened standard" when analyzing his ineffective assistance of counsel claim. The district court held that Williams "has not shown that failing to call the [two witnesses] 'fell below an objective standard of reasonableness.'" Regarding prejudice, the district court held that Williams "has not shown 'a reasonable probability that the outcome of the trial could have been different[]' if witnesses had been called as witnesses to corroborate certain facts." Williams asserts the district court held that he failed to show both *Strickland* prongs without considering whether there was a genuine issue of material fact. We disagree. The district court began its order by reciting the correct legal standard for summary dismissal and ended by finding "that there is no material issue of fact in dispute." This context shows that the district court applied the correct standard for summary dismissal. Even if the district court had applied an incorrect standard, such an error would not be automatic grounds for reversal because appellate review is based on the legal standard applicable to summary dismissal. *See Ridgley*, 148 Idaho at 675, 227 P.3d at 929.

Williams asserts he raised a genuine issue as to whether it was objectively unreasonable for his trial counsel to fail to "call corroboration witnesses on the size of the crowd." In support of his claim, Williams provided two affidavits. The first affidavit was from a member of the band that performed on the night of the charged offense and averred that he had "known Greg Williams for several years." The band member also averred that the concert building "was packed that night" and that some of his "friends told [him] they were turned away when they tried to get in

4

because the venue was full." The band member further indicated that it was dark at the concert. The second affidavit was from Williams' friend, who had "known Greg Williams for a long time and consider[s] him a friend." The friend averred that he received an email from one of the event organizers who knew Williams. In the email, the event organizer wrote that he was not present at the concert but "to [his] knowledge, the venue was at or near capacity, which is 320 people." According to Williams, his trial counsel should have called these witnesses to corroborate the "implication" of his testimony, which was that it "was too crowded for him to spot [the victim] easily," particularly since the victim's testimony--that there were only forty to fifty people there--would have implied the opposite.

The district court recognized that credibility was important but observed that Williams "appears to place far too much weight on tangential issues which would have provided minimal enhancement of [his] credibility." We agree with the district court's assessment. Three of the State's witnesses corroborated Williams' estimate of the crowd, not the victim's, by giving estimates ranging from more than one hundred to over two hundred people. The record contains no basis to suspect that these witnesses were biased in Williams' favor. It was not objectively unreasonable for trial counsel to not call witnesses (who had a connection to Williams) to further corroborate his testimony regarding the size of the crowd. Thus, Williams has failed to show error in the district court's conclusion that his claim failed on the deficiency prong of *Strickland*.

Regarding the prejudice prong of *Strickland*, Williams asserts that "credibility was a crucial issue in this case" but that he "did not have corroboration witnesses for his account of the venue being crowded and at or above capacity." As Williams acknowledges, however, his "trial counsel attempted to cast doubt on [the victim's] testimony on the crowd size" using testimony from the State's other witnesses. During closing argument, Williams' trial counsel made the following remarks:

> But [the victim] did make a couple of statements that were just flatly inconsistent with the other testimony that we have heard. The first thing that she said was at this [concert] on March 26th, there were 40 or 50 people at the concert. Security says there were over 200. Her own friend . . . says there were over 100 people there. [Williams] said the place is packed. It's dark. It's full of people.

These remarks show that trial counsel used testimony from the State's witnesses to attack the victim's credibility and corroborate Williams' account of the crowd size. He provides no reason

5

why witnesses with a connection to him would be more believable than the State's witnesses. Williams' post-conviction counsel, in his argument to the district court, stated: "I think that we could agree that the security guard is more important as a witness than just someone who is in the crowd or someone who is familiar with [Williams] who says, 'Yeah, I'm his friend'--which, of course, creates motive and bias." Although post-conviction counsel made this statement while discussing a different issue, the reasoning applies equally here. In short, trial counsel advanced a corroboration argument using better evidence than that which Williams now asserts should have been presented.

In addition, the material points of the victim's testimony were corroborated by other witnesses. The victim's acquaintance testified that, while in the concert building, he noticed Williams sitting down "four to five feet" from where the victim was standing. One of the security guards testified that he was outside with the victim for five to six minutes while an individual identified by the victim watched them both from a distance of twenty to twenty-five feet. A second security guard who arrived later testified that "the person that [the victim] pointed out had walked by and eyed her a couple times as he walked by, back and forth." According to this security guard, it was "kind of like a hard stare" that happened a couple of times, with the person getting about ten to fifteen feet from the victim. This security guard also testified that the person "turned towards [the victim] and kept his body turned towards her as he walked by." Trial counsel's failure to call witnesses to corroborate Williams' estimate of the crowd would have, at best, marginally affected this testimony. There was not a genuine issue of material fact supporting a reasonable probability that the outcome of the trial would have been different if Williams' trial counsel had called witnesses to further corroborate Williams' estimate of the crowd size. Consequently, Williams has failed to show the district court erred by summarily dismissing his ineffective assistance of counsel claim.

## IV.

## CONCLUSION

Williams has failed to show that the district court erred in summarily dismissing his petition for post-conviction relief. Consequently, the judgment dismissing Williams' petition for post-conviction relief is affirmed.

Judge GRATTON and Judge HUSKEY, **CONCUR**.